IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
QUANIA DENAY LONG,            )
                              )
        Plaintiff,            )
                              )
    v.                        )        1:21CV215
                              )
WALMART, INC.,                )
                              )
        Defendant.            )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Motion to Dismiss filed by Defendant Walmart, Inc. ("Defendant" or "Walmart"). (Doc. 7.) Plaintiff Quania Denay Long ("Plaintiff" or "Long") responded in opposition. (Doc. 12.) Defendant replied. (Doc. 13.) For the reasons set forth herein, this court will grant in part and deny in part Defendant's motion to dismiss. This court will decline to dismiss Plaintiff's First and Third Claims but will dismiss Plaintiff's Second Claim.

### I. FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). The facts, taken in the light most favorable to Plaintiff, are as follows.

In April 2019, Plaintiff was hired by Walmart's Kernersville store as a customer service manager. (Compl. Jury Trial Demanded ("Compl.") (Doc. 4) ¶ 4.) Five months later, she fell ill. (Id. ¶ 5.) A nurse practitioner authorized Plaintiff to return to work but stated that Long was "not permitted to work in refrigerator/freezer units" because it may trigger her asthma attacks. (Id. at 6.) Walmart did not observe this medical restriction and instead "required [Plaintiff] to continue working in refrigerator/freezer units." (Id. ¶ 7.) In mid-November 2019, Plaintiff was promoted. (Id. ¶ 6.)

In December 2019, Plaintiff "fell ill with respiratory issues." (Id. ¶ 8.) When she was out of work due to these issues, Plaintiff sought accommodation for her asthma in the form of a formal exemption from her duties in the refrigerator/freezer units. (Id. ¶¶ 8-9.) She received a letter from a nurse practitioner to this effect. (Id. at 7.) Plaintiff "was released to return to work on 24 January 2020." (Id. ¶ 8.) Around that time, Plaintiff's supervisor, Debbie Troy, "indicated that she planned to write up Long." (Id. ¶ 10.) "Long refused to sign any write-up as she had not violated any polices or instructions." (Id.)

On February 1, 2020, Plaintiff was scheduled to work a shift ending at 1:00 p.m. (Id. ¶ 11.) Management "demand[ed] that she overstay her schedule." (Id.) However, Plaintiff

- 2 -

received authorization from the store's Personnel Coordinator to leave at 1:00 p.m. as originally scheduled. (Id.) The next day, Troy presented Plaintiff with another write-up. (Id. ¶ 12.) Plaintiff again refused to sign it. (Id.) On February 3, 2020, when Plaintiff arrived for work, Troy sent her home. (Id. ¶ 13.) Two days later, "Walmart responded to Long's accommodation request by placing her on leave of absence from 11 January through 13 December 2020." (Id. ¶ 14.) On or around February 6, 2020, Troy told Plaintiff that she would be discharged, (id. ¶ 15), but on February 7, 2020, Troy's supervisor overrode that decision, (id. ¶ 16).

On February 18, 2020, Plaintiff went to the office of the Equal Employment Opportunity Commission ("EEOC") "to submit a Charge of Discrimination." (Id. ¶ 17.) While there, Plaintiff saw the Kernersville Walmart's "assistant manager, Kiondra Brown, who was there to submit a charge of discrimination herself." (Id.) Plaintiff alleges that "Kiondra Brown reported to Walmart that Long was at the office of EEOC to file a charge of discrimination." (Id. ¶ 18.) That same day, Walmart discharged Plaintiff, allegedly "in retaliation for her protected conduct." (Id. ¶ 19.) Plaintiff stresses that other than the aforementioned write-ups, she had "no history of discipline with Walmart." (Id. ¶ 6.)

## II.  **PROCEDURAL BACKGROUND**

Plaintiff filed her EEOC charge of discrimination on March 4, 2020. (Ex. A ("EEOC Charge") (Doc. 8-1).) Two days later, the EEOC dismissed the charge and sent Plaintiff a right to sue notice. (Ex. B ("Right to Sue Notice") (Doc. 8-2).)[1]

On February 10, 2021, Plaintiff filed a complaint in Forsyth County Superior Court against Defendant. (Compl. (Doc. 4).) The Complaint asserts three claims: (1) wrongful discharge in violation of public policy, (2) retaliation, and (3) punitive damages. (Id. ¶¶ 21-33.) On March 17, 2021, Defendant filed a petition with this court to remove the case from state to federal court on diversity jurisdiction grounds. (Doc. 1.) On March 23, 2021, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 7),

---

[1] Even though Plaintiff's EEOC charge and right to sue notice were not attached to her complaint, they may still be considered in adjudicating Defendant's motion to dismiss. This is because "[w]hile a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016) (quoting Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)). Defendant attached to its motion to dismiss Plaintiff's EEOC charge and right to sue notice. (Exs. A—B (Docs. 8-1, 8-2).) These EEOC documents are integral to Plaintiff's short complaint because the complaint claims that Plaintiff was retaliated against for filing an EEOC charge. (Compl. (Doc. 4) ¶¶ 17-19, 26-30.) Furthermore, Plaintiff has not challenged the documents' authenticity nor objected to their consideration.

along with an accompanying memorandum, (Doc. 8). Plaintiff responded in opposition. (Docs. 11, 12.) Defendant replied. (Doc. 13.) Defendant's motion to dismiss is now ripe for adjudication.

### III. STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

- 5 -

## IV. ANALYSIS

### A. First Claim: Wrongful Discharge in Violation of Public Policy

Defendant interprets Plaintiff's First Claim to be that Walmart, instead of reasonably accommodating Plaintiff's asthma, discharged her in violation of the public policy expressed in North Carolina's Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422 et seq. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br.") (Doc. 8) at 4.) Defendant understands this to be the basis for Plaintiff's First Claim because the claim quotes NCEEPA and then states that:

> [a] substantial factor and but-for cause of Walmart's discharge of plaintiff was her request for the reasonable accommodation for her asthmatic condition in the form of being exempt from working in the refrigerator/freezer environment. Walmart refused to make reasonable accommodation and discharged plaintiff from employment instead.

(Doc. 13 at 2 (emphasis omitted) (quoting Compl. (Doc. 4) ¶ 23).)

Defendant argues that this claim "is not viable under North Carolina law, and as such, it must be dismissed." (Def.'s Br. (Doc. 8) at 5-6.) Specifically, Defendant maintains that NCEEPA does not provide for a wrongful discharge in violation of public policy claim based on the denial of a reasonable accommodation. (Id. at 4-6.) In support of this position, Defendant references several "factually similar cases," (id. at 4-5), most

- 6 -

prominently Simmons v. Chemol Corp., 137 N.C. App. 319, 528 S.E.2d 368 (2000). Defendant cites Simmons for the proposition that "plaintiff's concern with the defendant's alleged failure to provide reasonable accommodations to the plaintiff is misplaced . . . since plaintiff's claim is based on wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.2." 137 N.C. App. at 323, 528 S.E.2d at 371. Under that statute, "a discussion of reasonable accommodations . . . is irrelevant." Id.

Plaintiff insists that Defendant has misinterpreted the basis for her wrongful discharge in violation of public policy claim. (Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 12) at 4.) Plaintiff clarifies that this claim is not grounded upon a failure to accommodate but rather disability discrimination. (Id. at 4-5.) Plaintiff argues that "[t]o the extent that Walmart argues that Simmons v. Chemol Corp., 137 N.C. App. 319, 528 S.E.2d 368 (2000) does not recognize this claim, it is mistaken." (Id. at 5.) Long explains that the plaintiff in Simmons alleged he was terminated "because of his condition, thus violating the public policy set out in N.C. Gen. Stat. § 143-422.2." (Id.) While the North Carolina Court of Appeals ultimately rejected the plaintiff's claim, it did so based on the claim's factual deficiency, "not some deficiency of law," (id. at 6), and thus Simmons stands for "the principle

that a claim for wrongful discharge in violation of G.S. 143-422.2 is recognized for . . . disability [discrimination]," (id. at 5 n.1).

The parties' interpretations of Simmons are both correct and compatible with one another — they simply highlight different holdings of the case. Defendant emphasizes Simmons' holding that a failure to accommodate claim is not cognizable under NCEEPA, (Def.'s Br. (Doc. 8) at 4-6), while Plaintiff emphasizes Simmons' holding permitting disability discrimination claims under NCEEPA, (Pl.'s Resp. (Doc. 12) at 5-6). Therefore, Defendant's motion to dismiss Plaintiff's First Claim hinges on whether the claim pleads failure to accommodate or disability discrimination. If the claim pleads the former, as Defendant argues, then it must be dismissed. But if it pleads the latter, as Plaintiff argues, then it may survive the motion to dismiss.

While Plaintiff's First Claim is no model of clarity, this court finds that when viewed in its totality, it states a claim for wrongful discharge in violation of public policy based on disability discrimination. Although language in the First Claim discusses Defendant's failure to accommodate Plaintiff's asthma, (Compl. (Doc. 4) ¶ 23), the claim's heading plainly states that the claim is based on disability discrimination: "FIRST CLAIM FOR RELIEF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY DISABILITY DISCRIMINATION," (id. at 3 (emphasis added).)

Moreover, the claim excerpts language from NCEEPA stating "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to . . . hold employment without <u>discrimination or abridgement on account of</u> . . . <u>handicap</u>." (<u>Id.</u> ¶ 22 (emphasis added) (quoting N.C. Gen. Stat. § 143-422.2).) Given that at the motion to dismiss stage this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor," <u>Est. of Williams-Moore</u>, 335 F. Supp. at 646, this court finds that the claim's heading and excerpted language from NCEEPA suffice to state a claim for wrongful discharge in violation of public policy based on disability discrimination. Because such a claim is cognizable under NCEEPA, Defendant's motion to dismiss Plaintiff's First Claim will be denied.

    B.    <u>**Second Claim: Retaliation**</u>

Plaintiff's Second Claim alleges that Defendant's "decision to discharge plaintiff was based in part by the motivation to retaliate against her for engaging in the protected activity of filing a charge of discrimination with the [EEOC]." (Compl. (Doc. 4) ¶ 28.) The complaint does not specify the exact legal basis for this retaliation claim, and as a result, the briefing addresses the claim as being brought under either the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq</u>., or alternatively NCEEPA. (Def.'s Br. (Doc. 8) at 6-8; Pl.'s Resp.

- 9 -

(Doc. 12) at 8-11.) This court concludes that regardless of which statute the claim is brought under, it must be dismissed.

   **1.   ADA**

Defendant argues that if the retaliation claim is brought pursuant to the ADA, then it must be dismissed as untimely. (Def.'s Br. (Doc. 8) at 6-7.) The process of how and when to bring an ADA claim is as follows. "The ADA incorporates the administrative enforcement provisions of Title VII of the Civil Rights Act of 1964, including the requirement that a person exhaust her administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court." Williams v. N.C. Admin. Off. of the Courts, 364 F. Supp. 3d 596, 601 (E.D.N.C. 2018) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)). An aggrieved individual must "file an EEOC charge within 180 days of each alleged ADA violation." Id. (citations omitted). If the EEOC later dismisses the charge and closes its file, the EEOC will also issue a right to sue notice apprising the aggrieved individual of his or her right to file a lawsuit within ninety days. Filing a Lawsuit, https://www.eeoc.gov/filing-lawsuit (last visited Nov. 30, 2021); Williams, 364 F. Supp. 3d at 604 ("The ADA requires a plaintiff to file suit within 90 days of receiving a right to sue notice from the EEOC." (citing 42 U.S.C. §§ 2000e-5(f)(1), 12117(a))).

Here, Plaintiff filed her EEOC charge — in which she checked the box for discrimination based on retaliation — on March 4, 2020. (EEOC Charge (Doc. 8-1).) Plaintiff received her right to sue notice two days later, triggering the ninety-day period to file a lawsuit. (Right to Sue Notice (Doc. 8-2).) Accordingly, Plaintiff's right to sue lapsed in early June 2020 — well before she filed her complaint on February 10, 2021, (Compl. (Doc. 4)). Nevertheless, Plaintiff insists that her retaliation claim should not be dismissed as untimely because of an exception to the EEOC administrative process. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). That exception, established by Nealon, exempts "a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge [from] exhaust[ing] administrative remedies before suing in federal court." Id.

However, the sequencing in this case renders Plaintiff unable to avail herself of Nealon. The Nealon "exception does not apply when, as in the instant case, the alleged retaliation occurred before the plaintiff filed an [EEOC} administrative complaint." Wright v. CarFax, Inc., Civil Action No. 3:13-cv-451, 2013 WL 6253148, at *5 (E.D. Va. Dec. 3, 2013) (citations omitted); accord, e.g., Davenport v. Wal-Mart Stores E., L.P., Civil Action No. 3:08cv119, 2008 WL 1984259, at *4 (E.D. Va. May 6, 2008) ("[T]his exception to the exhaustion requirement

- 11 -

does not apply when the alleged retaliation occurred before the plaintiff filed his or her administrative complaint." (citations omitted)); Byers v. Napolitano, Civil No. 3:09CV25-V, 2010 WL 4818099, at *3-4 (W.D.N.C. Nov. 19, 2010) (same). In other words, in cases where "the alleged acts of retaliation did not occur as a result of [the plaintiff] filing the EEOC charge, but instead, occurred prior to the filing of the charge . . . the facts . . . fail to trigger the Fourth Circuit's rule in Nealon." Coles v. Carilion Clinic, 894 F. Supp. 2d 783, 793 (W.D. Va. 2012).

Here, the alleged retaliation occurred prior to Plaintiff filing her EEOC charge, and thus the Nealon exception is not triggered. Plaintiff's complaint asserts that "[o]n 18 February 2020, Long visited the office of the [EEOC] to submit a Charge of Discrimination." (Compl. (Doc. 4) ¶ 17.) The complaint alleges that she was terminated that same day in retaliation "for engaging in the protected activity of filing a charge of discrimination with the [EEOC]." (Id. ¶¶ 19, 28.) However, while Plaintiff evidently visited the EEOC on February 18, 2020, intending to file a charge of discrimination, it appears the charge itself was not actually filed until March 4, 2020, over two weeks later. (EEOC Charge (Doc. 8-1).) Because the alleged retaliation — Plaintiff's February 18 termination — occurred before Plaintiff filed her March 4 EEOC charge, the Nealon

- 12 -

exception is inapplicable. See, e.g., Wright, 2013 WL 6253148, at *5; Davenport, 2008 WL 1984259, at *4; Byers, 2010 WL 4818099, at *3; Coles, 894 F. Supp. 2d at 793.

Therefore, Plaintiff's retaliation claim is subject to the ADA's administrative process. As discussed, that process requires that before filing a lawsuit, an aggrieved individual must first file an EEOC charge within 180 days of the discriminatory conduct. Williams, 364 F. Supp. 3d at 601. If the EEOC subsequently issues a right to sue notice, the aggrieved individual must sue within ninety days. Id. at 604. Plaintiff has not complied with this process. More than 180 days have passed since the alleged retaliation occurred on February 18, 2020, and likewise, more than ninety days have passed since the EEOC issued Plaintiff her right to sue notice on March 6, 2020. Thus, Plaintiff's retaliation claim, insofar as it is based on the ADA, is untimely and must therefore be dismissed as a matter of law.

### 2. **NCEEPA**

Defendant argues that if Plaintiff's retaliation claim is based on NCEEPA, then it must be dismissed because "courts have found that the statute does not, as a matter of law, 'create a private right of action for retaliation or provide a source of public policy concerning retaliation.'" (Def.'s Br. (Doc. 8) at 7 (emphasis omitted) (quoting Swann v. Source One Staffing

Sols., 778 F. Supp. 2d 611, 622 (E.D.N.C. 2011)).) Plaintiff acknowledges this adverse precedent but claims that it is merely federal courts "forecasting North Carolina law, not published decisions of the North Carolina appellate courts." (Pl.'s Resp. (Doc. 12) at 9.) Plaintiff maintains that the federal courts have forecasted North Carolina law incorrectly because the "North Carolina courts, if faced with this question directly" "would recognize a claim of retaliatory discharge in violation of the federally-protected activity of filing a charge of discrimination with the EEOC." (Id. at 10.)

Because federal courts' interpretation of North Carolina law on this issue has been repeated, unequivocal, and well-reasoned, this court is unwilling to find that NCEEPA provides a cause of action to pursue a retaliation claim. "Such extension should come, if at all, from the North Carolina courts." Wray v. N. Telecom, Inc., No. CIV. 1:93CV00120, 1995 WL 945825, at *7 (M.D.N.C. Jan. 27, 1995). The Fourth Circuit has repeatedly concluded as much. Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002) ("North Carolina courts and federal courts applying North Carolina law have . . . f[ound] repeatedly that no private cause of action exists for retaliation . . . in violation of public policy. We decline to expand the provisions of the NCEEPA[.]"); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003) ("[T]here is no private right of action

- 14 -

under North Carolina law for retaliation under § 143-422.2."). So too have our peer courts in the other two North Carolina federal districts. E.g., Sempowich v. Tactile Sys. Tech., Inc., No. 5:18-CV-488-D, 2020 WL 6265076, at *24 (E.D.N.C. Oct. 23, 2020) ("Section 143-422.2 does not create a private right of action for retaliation or provide a source of public policy concerning retaliation." (citations omitted)), appeal docketed, No. 20-2245 (4th Cir. Nov. 20, 2020); Safari v. Cooper Wiring Devises, Inc., No. 3:11-CV-12-RJC-DSC, 2012 WL 1247149, at *4 (W.D.N.C. Apr. 13, 2012) (same). Courts in this district are in accord. E.g., Wray, 1995 WL 945825, at *7 ("[T]o the extent that Plaintiff seeks to pursue a state-law claim for retaliation, that claim will be dismissed because section 143-422.2 does not express any public policy concerning retaliation for opposition to discriminatory practices. No North Carolina court has extended the public-policy exception to include a claim for discharge in retaliation for complaining about discriminatory employment practices." (internal citation omitted)). Indeed, Wray explains why reading a retaliation claim into NCEEPA is inappropriate:

> The North Carolina General Assembly recently
> demonstrated awareness of its ability to address
> retaliatory employment actions by enacting Article 21
> of Chapter 95 of the North Carolina General Statutes.
> N.C. Gen. Stat. §§ 95-240 to -244 (Supp. 1992),
> provides a cause of action for employees retaliated
> against for taking various actions related to . . .

- 15 -

> the Occupational Safety and Health Act . . . . If the
> General Assembly had desired to state a public policy
> to provide employees with a cause of action for
> retaliatory discharge in relation to discriminatory
> employment practices, it could have easily done so.

Id. at *7 n.1. Moreover, this court, as recently as last year, concluded that "[d]espite Plaintiff's arguments to the contrary, North Carolina courts and federal courts applying North Carolina law have repeatedly found that 'no private cause of action exists for retaliation . . . in violation of public policy.'" Schmitz v. Alamance-Burlington Bd. of Educ., No. 1:18CV910, 2020 WL 924545, at *14 (M.D.N.C. Feb. 26, 2020) (quoting Jones, 43 F. App'x at 600). In light of this overwhelming authority, this court declines to "expand the provisions of the NCEEPA," Jones, 43 F. App'x at 600, to provide a source of public policy concerning retaliation and thus will dismiss Plaintiff's retaliation claim insofar as it is based on that statute.

### C.  Third Claim: Punitive Damages

Defendant argues that because Plaintiff "has failed to state a plausible claim for relief under the two underlying claims, Plaintiff's punitive damages claim must likewise be dismissed." (Def.'s Br. (Doc. 8) at 9.) However, this court has found that Plaintiff sufficiently stated a wrongful discharge disability discrimination claim. Supra Part IV.A. Therefore, at this time, Plaintiff's request for punitive damages will not be dismissed.

## V. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 7), is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with regard to Plaintiff's Second Claim for retaliation.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (Doc. 7), is **DENIED** with regard to Plaintiff's First Claim for wrongful discharge in violation of public policy based on disability discrimination and Plaintiff's Third Claim for punitive damages.

This the 3rd day of December, 2021.

_____
United States District Judge